United States District Court
Southern District of Texas
**ENTERED**
September 14, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WILLIAM WINDHAM, | § § § | |
| Plaintiff, | § | |
| VS. | § § | CIVIL ACTION NO. 4:13-CV-1576 |
| HARRIS COUNTY TEXAS, *et al*, | § § § | |
| Defendants. | § | |

## ORDER

Before the Court is Defendants Harris County Texas, *et al*'s Motion for Summary Judgment (Doc. #34) and Plaintiff William Windham's Response to Defendants' Motion for Summary Judgment (Doc. #43). After considering counsels' arguments and the applicable legal authority, the Court grants Defendants' Motion for Summary Judgment on all causes of action against Deputy Dunn, Deputy Pasket and Harris County.

I.   **Background**

On May 31, 2011, William Windham ("Plaintiff"), a licensed physician, "bumped" a car in front of him as he attempted to enter I-45 North around Paramatta Lane. Doc. #15 at 4[1]. The driver of the "bumped" car then called the police and alleged that Plaintiff had been driving while intoxicated. *Id.* Deputy Pasket arrived on the scene, took Plaintiff's license and began performing standard field sobriety tests (SFST's) to determine Plaintiff's sobriety. Doc. #34 at 31. Deputy Pasket claims that Plaintiff's eyes were bloodshot and watery, his eyelids were trembling, his speech was slurred and he had a white substance at the corners of his mouth. *Id.* Plaintiff claims he was talking normally, walking around the scene with no unsteady gait, no trebling hands, no slurring of speech, no blank stare, and no alcohol on his breath. Doc. #43 at

---

[1] CM/ECF page numbers used throughout when referring to filings on the record.

22. Approximately one hour and ten minutes later, Deputy Dunn arrived to perform additional SFST's and provide his expert opinion on Plaintiff's condition. *Id.* at 28. Doc. #34 at 31 (stating that Deputy Dunn is a certified Drug Recognition Expert). Administering these tests took approximately twenty minutes and then Plaintiff was free to leave. Doc. #43 at 28.

Plaintiff, at the time of the incident, had a medical condition making it unsafe for him to extend his neck. Doc. #15 at 3. In order to avoid further injury, Plaintiff carried with him a doctor's note warning of the dangers of extending his neck, and presented it to the deputies prior to performing the SFST's. *Id.* at 5. Furthermore, Plaintiff discussed his condition with the deputies. *Id.* Deputy Dunn, however, does not recall whether he received or read this note. Exhibit #6 Deposition of Dunn, page 30, line 1-2. Plaintiff was still asked to perform the SFST's and allegedly suffered immediate neurological dysfunction in the form of sexual impotence and lost bladder function as a result. Doc. #43 at 21.

## II. Legal Standards

### A. Summary Judgment

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986)).

If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *See Celotex*, 477 U.S. at 325. While the

party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

When the moving party has met its Rule 56 burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).

### B. Qualified Immunity

"Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Estate of Davis v. City of North Richland Hills*, 406

F.3d 375, 380 (5th Cir. 2005) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Therefore, in order to pursue legal action against a government official, a Plaintiff must show that the official violated his Constitutional or statutory right and that the right was "clearly established" in light of the specific facts of the case. *Scott v. Harris*, 550 U.S. 372, 377 (2007). If more than one officer is named as a defendant, each officer's conduct must be examined individually. *Hernandez v. Texas Dep't of Protective and Regulatory Servs.*, 380 F.3d 872, 883-84 (5th Cir. 2004).

### C. Unreasonable Search and Seizure

#### 1. Wrongful Detention

The Fourth Amendment protects citizens from unreasonable searches and seizures. USCS Const. Amend. 4. Within this broad protection, the Fifth Circuit has held that "warrantless searches and seizures are per se unreasonable unless they fall within a few narrowly defined exceptions." *United States v. Ho*, 94 F.3d 932, 935 (5th Cir. 1996). These include consensual encounters, limited investigative stops and "warrantless full-blown body search[es]." *United States v. Cooper*, 43 F.3d 140, 145 (5th Cir. 1995). In order to avoid a constitutional violation, each exception requires a particular level of suspicion justifying the search or seizure.

At the lowest end, a consensual encounter requires no objective level of suspicion as the individual willingly agrees to speak and cooperate with the police. *Id.* Limited investigative stops, also known as "Terry Stops", however, require a reasonable suspicion rooted in articulable facts and rational inferences, that the individual has committed or is about to commit a crime. *Terry v. Ohio*, 392 U.S. 1, 21 (1968). Lastly, warrantless full-blown searches require "probable cause," as stated directly in the Fourth Amendment. *Cooper*, 43 F.3d at 145. In addition to these limitations, the Fifth Circuit has also held that an individual's Fourth Amendment right can be

violated if the length of his detention extends beyond the valid reason for the initial stop. *United States v. Dortch*, 199 F.3d 193, 198 (5th Cir. 1999).

### 2. Excessive Force

The Supreme Court has held that the Fourth Amendment's protection against unreasonable searches and seizures extends to the use of excessive force during a search or seizure. *Graham v. Connor*, 490 U.S. 386, 394 (1989). A violation of this Constitutional right occurs when an individual sustains an injury resulting directly from the use of force that was clearly excessive. *Hogan v. Cunningham*, 722 F.3d 725, 734 (5th Cir. 2013). Whether the force was excessive "should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham*, 490 U.S. at 395.

### 3. Monell Policy

Similar to the immunity afforded government officials in performing their duties, government entities also receive a degree of protection from suit as to avoid a *respondeat superior* scheme of liability. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 691 (1978). In order for an individual to succeed on a claim against a government entity, he must prove that the execution of a government custom or policy caused him injury under United States Code Section 1983 and that the governmental policy maker acted with a deliberate indifference to the possibility that such a custom or policy could cause the injury sustained. *Id.*; *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 404 (1997). The "deliberately indifferent" standard has been described as an intentional choice, not a mere unintentional negligent oversight. *Evans v. City of Marlin*, 986 F.2d 104, 108 (5th Cir. 1993)

If an individual is unable to provide evidence of an explicitly adopted policy, the Fifth Circuit has provided that an officer's conduct may be "ratified" as policy or custom through

approval of a city policymaker. *Grandstaff v. Borger*, 767 F.2d 161 (5th Cir. 1985) (stating that if policy makers know or should know of officers' likely behavior, the city should be liable when the inevitable happens and the officers behave as expected). However, the Fifth Circuit narrowed this theory to only apply in "extreme factual situations." *Peterson v. City of Fort Worth*, 588 F.3d 838, 848 (5th Cir. 2009) (comparing *Grandstaff*, in which officers "poured" gunfire onto an innocent person, with *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998), in which officers shot a fleeing suspect in the back).

### D. Failure to Create Policy or Train

In the event that a government entity does not have official or ratified policies pertaining to an individual's claim, it can still be held liable for failing to implement a policy that could have prevented the individual's injury. *Evans*, 986 F.2d at 108. Succeeding on this type of claim entails a showing of three elements: (1) that the government entity failed to create a policy, (2) that the failure violated an individual's Constitutional right, and (3) that the policy maker was deliberately indifferent that such a failure would cause a Constitutional violation. *Id.* Again, the "deliberately indifferent" standard has been described as an intentional choice, not a mere unintentional negligent oversight. *Id.*

Similarly, government entities can also be held liable for a failure to train its officers. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *Pineda v. City of Houston*, 291 F.3d 325, 334-35 (5th Cir. 2002). A plaintiff asserting this claim must show: (1) inadequate training procedures that (2) violated his Constitutional rights and (3) that the policy maker was deliberately indifferent that such a failure would cause a Constitutional violation. *Id.* Additionally, more than just one incident of misconduct must be the basis for liability. *Harris*, 489 U.S. at 390 ("that a particular officer may be unsatisfactorily trained will not alone suffice to

fasten liability on the city"); *Pineda*, 291 F.3d at 334-35 (stating that the "single incident exception" is rarely permissible as to avoid a regime of *respondeat superior* liability for municipal entities).

### E. Deprivation of Medical Care

Under the Fourteenth Amendment, pre-trial detainees are entitled to reasonable medical care unless failing to supply it is related to a legitimate government objective. *Nerren v. Livingston Police Dep't*, 86 F.3d 469, 474 (5th Cir. 1996). A plaintiff must show (1) that the defendant had subjective knowledge of a substantial risk of serious medical harm, (2) that the defendant responded with deliberate indifference and (3) that the defendant had no legitimate government interest or objective in denying medical care. *Id.*

### F. Failure to Accommodate

Under the Americans with Disabilities Act (ADA) and the Rehabilitation Act, an individual can recover from a government entity, not an individual, if the following is present: (1) a qualified individual with a disability (2) was intentionally denied the benefits of services provided by a public entity because of the disability, and (3) the alleged injury was proximately caused by the denial of benefits. *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671-72 (5th Cir. 2004); *Delano-Pyle v. Vict. Cnty.*, 302 F.3d 567, 574 (5th Cir. 2002) (citing *Carter v. Orleans Parish Pub. Sch.*, 725 F.2d 261, 264 (5th Cir. 1984)) ("A plaintiff asserting a private cause of action for violations of the ADA or the RA may only recover compensatory damages upon a showing of intentional discrimination.").

### G. Self-Evaluations

To maintain compliance with the ADA, every public entity is required to "evaluate its

current services, policies and practices, and the effects thereof that do not or may not meet the requirements of [the regulations]" and perform modifications to the extent necessary. *Hainze v. Richards*, 207 F.3d 795, 802 (5th Cir. 2000).

### III. Analysis

#### A. Unreasonable Search and Seizure

##### 1. Wrongful Detention

###### i. Liability of Individual Officers

In order to hold the officers liable on this claim, Plaintiff must first show that his Constitutional rights have been violated. *Scott*, 550 U.S. at 377. Second, Plaintiff must prove that the right was "clearly established." *Id.* This analysis must be performed for each individual officer. *Hernandez*, 380 F.3d at 883-84.

Under the first prong of this analysis, the officers must have detained Plaintiff without the necessary level of suspicion for the extent of his detainment. *Ho*, 94 F.3d at 935. Both parties agree that the detainment could be considered a "Terry Stop," thus only requiring the officers to have had a "reasonable suspicion" based on articulable facts and rational inferences that Plaintiff had committed or was about to commit a crime. Doc. #34 at 28-30; Doc. #43 at 24; *Terry*, 392 U.S. at 21.

Given the specific circumstances surrounding Plaintiff's detainment, that he had been in a minor car accident, that the officers were informed of Plaintiff's alleged intoxication by another driver, and that Plaintiff's eyes were bloodshot, Deputy Pasket and Deput Dunn could have reasonably believed Plaintiff had driven intoxicated or was about to do so if not detained. Doc. #34 at 31; *Terry*, 392 U.S. at 21.

As a final note, Plaintiff also alleges a Constitutional violation based on the length of his

8

detainment. However, unlike the cases cited by Plaintiff, including *Dortch*, Plaintiff's detainment did not "extend beyond the valid reason for the initial stop." *Dortch*, 199 F.3d at 198 (involving a plaintiff who was initially stopped for a traffic violation but was further detained and required to wait for a drug dog inspection). Plaintiff was originally stopped on a suspicion of driving while intoxicated and his entire detainment pertained to performing SFST's in order to prove or dispel the suspicion. Therefore, the length of Plaintiff's detention was appropriate and did not amount to a Constitutional violation of his Fourth Amendment rights.[2] Defendants' motion for summary judgment on this issue is therefore granted.

### ii. Liability of Harris County

*Monell* states that a government entity may only be held accountable for the actions of its employees if the alleged misconduct stems from a policy or custom. *Monell*, 436 U.S. at 691. Plaintiff offers no evidence of a custom or policy other than stating "It is the policy, practice, custom and procedure of Harris County, Texas to have people wait for all lengths of time up to and including the time Dr. Windham waited to administer the SFSTs." Doc. #15 at 5. So, while Plaintiff was detained for approximately one and a half hours, one incident of wrongful behavior is insufficient to show a policy or custom of an entire government entity. *Harris*, 489 U.S. at 390 (1989). Therefore, absent the citation of a specific policy that violated Plaintiff's constitutional rights, Harris County cannot be held liable for Plaintiff's claim of wrongful detention and summary judgment is granted on the issue.

---

[2] The Court is not blind to the length of the detention which lasted over an hour, however, a lengthy stop in and of itself does not create an actionable item. The officers proceeded with the stop as quickly as time and traffic would allow.

9

### 2. Excessive Force

#### i. Liability of Individual Officers

To state a claim for the use of excessive force under the Fourth Amendment, plaintiffs must first show they suffered a seizure. *See Flores v. City of Palacious*, 381 F.3d 391, 396 (5th Cir. 2004). However, the fact that there was a "Terry stop" is not disputed. Thus, in order to bring a suit against Deputies Dunn and Pasket, Plaintiff must prove: 1) first, that his Constitutional rights have been violated; and 2) that the right was "clearly established." *Scott*, 550 U.S. at 377.

To prove a violation of his constitutional right by use of excessive force, Plaintiff must produce evidence that shows he suffered: (1) an injury that, (2) results directly and only from the use of force, (3) that was clearly excessive. *Hogan*, 722 F.3d at 734.

In the present case, Plaintiff has submitted evidence of an injury resulting directly from the SFST. While Defendants' expert disputes the cause of the injury, this is a fact question for a finder of fact. *See* Doc. #43 at 21. At this juncture, this Court is not the finder of fact and will not comment on the quality of this evidence.

However, Plaintiff's claims are undone because the injury was not a new one. Plaintiff's present injury was an exacerbation of a pre-existing injury. In *Wells v. Bonner*, the Fifth Circuit ruled that exacerbation of a pre-existing injury or condition does not satisfy the requirement that injury result "directly and only from" an officer's use of force. 45 F.3d 90, 96 (5th Cir. 1995) (internal quotation marks omitted) (discussing the exacerbation of a previous shoulder injury for which the plaintiff had undergone surgery). While the symptoms Plaintiff has experienced are seemingly new–incontinence and sexual impotence, the neck injury itself is the same. Plaintiff has not put forth any summary judgment evidence to the contrary and therefore, summary

10

judgment is granted on this issue.[3]

### ii. Liability of Harris County

Consistent with the Court's granting of summary judgment in favor of Defendants, Plaintiff has not put forward evidence of an injury resulting from the Deputies' actions. However, even assuming it had, Harris County would still not be liable.

*Monell* states that a government entity may only be held accountable for the actions of its employees if the alleged misconduct stems from a policy or custom. *Monell*, 436 U.S. at 691. The only evidence Plaintiff has offered is the testimony of Dunn in which he stated "if people say they cannot do the SFST he still moves forward with it anyway because that is what's done at the Harris County Sheriff's Department." Doc. #43 at 7.

However, this testimony, even when viewed in a light most favorable to Plaintiff, is not sufficient evidence to create a genuine issue of material fact regarding whether a policy or custom of administering SFST's, despite the potential for causing neurologic injury, exists within Harris County. As evidence of this policy, Plaintiff has put forward the testimony of a single field officer. However, there is no evidence corroborating evidence, not a single document suggesting this is a policy, and no previous cases of harm from improper SFST's. As qualified immunity is presumed and it is Plaintiff's burden, more is necessary to survive Defendants' Motion for Summary Judgment. Accordingly, without more, Defendants' Motion for Summary Judgment as to Harris County granted.

---

[3] Defendant officers assert that Plaintiff's consent absolves them of liability for both the wrongful detention claim and the excessive force claim. While this Court does not believe consent extends so far as to a person who believes they are arrested, the fact of the matter is an excessive force claim cannot survive when the police did not touch the plaintiff. This Court has not found, and the parties have not cited, a single case that holds the police liable for excessive force when they neither touched, nor caused any projectile to touch the person being arrested.

### B. Policy or Custom of Allowing Officers to Determine Suspects' Medical Needs

*Monell* states that a government entity may only be held accountable for the actions of its employees if the alleged misconduct stems from a policy or custom. *Monell*, 436 U.S. at 691. Plaintiff asserts: "Harris County, Texas has a custom and practice of allowing deputies to determine the medical needs of a suspect and to disregard the information provided by suspects in regards to the suspect's medical needs including the medical needs provided in a doctor's letter." Doc. #15 at 14.

However, Plaintiff offers no evidence that this "practice" occurred beyond the actions of Officers Dunn and Pasket, thereby entitling Defendants to summary judgment on the issue. *Harris*, 489 U.S. at 390 (1989) ("that a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city"); *Pineda*, 291 F.3d at 334-35 (stating that the "single incident exception" is rarely permissible as to avoid a regime of *respondeat superior* liability for municipal entities).

### C. Failure to Train Officers or Create a Policy to Deal with People Who Cannot Extend Their Neck

In line with liability imposed through *Monell*, government entities can be held liable for failing to create a policy or properly train its employees. *Pineda*, 291 F.3d at 334-35; *Evans*, 986 F.2d at 108. A plaintiff asserting a failure to train claim must show: (1) inadequate training procedures that (2) violated his Constitutional rights and (3) that the policy maker was deliberately indifferent that such a failure would cause a Constitutional violation. *Pineda*, 291 F.3d at 334-35. Likewise, the showing for a failure to create a policy requires a showing that: (1) the government entity's failure to create a policy, (2) that the failure violated an individuals' Constitutional right, and (3) that the policy maker was deliberately indifferent. *Evans*, 986 F.2d

at 108. For the first element of both causes of action, Plaintiff has produced testimonial evidence that Harris County conducts no training in the ADA and no training concerning neck injuries and the HGN test, nor does it have a policy in place to do so. Doc. #43 at 6-7. As for the violation of a Constitutional right, Plaintiff provides evidence that the arresting deputies did not accommodate his disability which in turn

However, even assuming sufficient evidence of the first two factors has been put forward, Plaintiff has offered no evidence of the deliberate indifference of a policy maker in Harris County. *Evans*, 986 F.2d at 108 (5th Cir. 1993) (stating that deliberate indifference entails an intentional choice, not just an unintentional negligent oversight). Plaintiff has produced no evidence that Harris County intentionally failed to train its employees. Accordingly, Defendants' motion for summary judgment on Plaintiff's claims for failure to train and failure to create a policy is granted.

### D. Deprivation of Medical Care

Plaintiff alleges a deprivation of medical care guaranteed under the Fourteenth Amendment. However, the evidence produced does not support this claim. Under the Fourteenth Amendment, pre-trial detainees are entitled to reasonable medical care unless failing to supply it is related to a legitimate government objective. *Nerren*, 86 F.3d at 474. In order to hold Defendants liable, Plaintiff must first show that the officers are not entitled to qualified immunity. In order to do this, Plaintiff must prove his Constitutional rights have been violated and that the right was "clearly established." *Scott*, 550 U.S. at 377.

Therefore, under the first prong of the qualified immunity analysis–a Constitutional right has been violated–Plaintiff must show (1) that the defendant had subjective knowledge of a substantial risk of serious medical harm, (2) that the defendant responded with deliberate

indifference and (3) that the defendant had no legitimate government interest or objective in denying medical care. *Nerren*, 86 F.3d at 474. Unlike *Nerren*, the evidence shows that Plaintiff never expressly asked for medical care and even refused it from the medical team on-site. Doc. #34 at 39; *Nerren*, 86 F.3d at 470 (stating that the plaintiff expressly asked for medical attention at the time of his arrest).

Instead, it appears from the facts that while Plaintiff expressed his concern and hesitation with performing the SFST's due to his medical condition, Plaintiff is now attempting to classify this behavior as a request for medical care. This evidence is insufficient to show a deprivation of medical care and entitles Defendant officers to qualified immunity. Defendants' motion for summary judgment on this issue is granted.

### E. Failure to Accommodate

Under the Americans with Disabilities Act (ADA) and the Rehabilitation Act, an individual can recover from a government entity, not an individual, if the following elements are present: (1) a qualified individual with a disability, (2) was intentionally denied the benefits of services provided by a public entity because of the disability, and (3) the alleged injury was proximately caused by the denial of benefits. *Melton*, 391 F.3d at 671-72; *Delano-Pyle*, 302 F.3d at 574 (stating that an individual must show intentional discrimination in order to recover compensatory damages under the ADA). Both parties agree that Plaintiff was a qualified individual with a disability and that a police response to a 911 call reporting a drunk driver is a public service. Doc. #34 at 50; Doc. #43 at 12. As for the denial of benefits, Harris County asserts that Plaintiff's consent to perform the SFST's without any accommodation is an affirmative defense. *Id.* at 51. This assertion is a misstatement of the law and is unsupported by any relevant cases. Conversely, Plaintiff contends that he was denied benefits because of Harris

14

County's failure to accommodate his condition.

Looking to *Delano-Pyle*, Plaintiff appears to be entitled to relief. *Delano-Pyle*, 302 F.3d at 575. In *Delano-Pyle*, a fender bender with a supposedly intoxicated driver was reported to police. *Id*. In response, officers arrived and administered standard sobriety tests, with no alterations, to the plaintiff despite being informed of his hearing disability. *Id*. The plaintiff then failed the tests because he could not properly understand the officers' verbal instructions. *Id*. Thus, Plaintiff's factual scenario is almost identical except for the type of disability, which has already been established as qualified under both acts. Moreover, Plaintiff allegedly suffered physical injuries as a result, unlike the plaintiff in *Delano-Pyle*.

However, not only must Plaintiff experience discrimination, the discrimination must be because of the disability in order to recover compensatory damages for a private cause of action. *See Melton*, 391 F.3d at 671-72. Plaintiff offers no evidence of intentional discrimination, and thus fails to satisfy this final element. Harris County is entitled to summary judgment on this issue.

### F. Ratification Theory

Plaintiff asserts a theory of ratification stating that, even if an explicit policy is not in place for any of the previous claims, the acceptance of Deputy Dunn and Pasket's behavior by policy makers at Harris County after Plaintiff lodged a complaint ratifies the conduct as official policy. Although the Fifth Circuit approved this theory in *Grandstaff*, it has since limited its effect making ratification inapplicable to Plaintiff's present case. *Grandstaff*, 767 F.2d at 170 (5th Cir. 1985) (stating that if policy makers know or should know of officers' likely behavior, the city should be liable when the inevitable happens and the officers behave as expected).

The limiting case, *Peterson*, however, states that ratification applies only in "extreme

factual situations" unlike the one presented by Plaintiff. *Peterson*, 588 F.3d at 848 (comparing *Grandstaff*, in which officers "poured" gunfire onto an innocent person, with *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998), in which officers merely shot a fleeing suspect in the back). In short, precedent "does not stand for the broad proposition that if a policymaker defends his subordinates and if those subordinates are later found to have broken the law, then the illegal behavior can be assumed to have resulted from an official policy." *Peterson*, 588 F.3d at 848 (citing *Coon v. Ledbetter*, 780 F.2d 1158, 1161-62 (5th Cir. 1986)). Therefore, Plaintiff's ratification theory does not apply to any of the aforementioned claims.

### G. Injunctive Relief for Failing to Self-Evaluate and Alter Practices in Accord with the ADA

To maintain compliance with the ADA, every public entity is required to "evaluate its current services, policies and practices, and the effects thereof that do not or may not meet the requirements of [the regulations]" and perform modifications to the extent necessary. *Hainze*, 207 F.3d at 802. (stating that a plaintiff can seek injunctive relief for failing to self-evaluate and alter practices in accord with the ADA). Because no violation of the ADA has been established, this claim is moot and Defendants' motion for summary judgment on the issue is granted.

## IV. Conclusion

For the reasons stated above, Defendants' Motion for Summary Judgment against all Defendants is GRANTED.

It is so ORDERED.

SEP 1 3 2016
_____
Date

_____
The Honorable Alfred H. Bennett
United States District Judge